Mike M. Arias, Esq. (SBN 115385)
Arnold C. Wang, Esq. (SBN 204431)
M. Anthony Jenkins, Esq. (SBN 171958)
**ARIAS SANGUINETTI WANG & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone: (310) 844-9696
Facsimile:  (310) 861-0168

Steven D. Liddle, Esq.*
Laura L. Sheets, Esq.*
Matthew Z. Robb, Esq.*
*Pro hac vice* applications to be submitted
**LIDDLE SHEETS COULSON P.C.**
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Facsimile:  (313) 392-0025

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FREDDY GUTIERREZ, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>C & H SUGAR, INC.,<br><br>Defendant. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

**INTRODUCTION**

1.     Plaintiff Freddy Gutierrez, and a putative class of his neighbors, bring this class action against Defendant C & H Sugar, Inc. ("Defendant") for its release of noxious odors onto Plaintiff's property.

2. Defendant operates the C & H Sugar facility (the "Facility") located at 830 Loring Avenue, Crockett, CA 94525, which offloads, stores and refines 800,000 tons of raw sugar annually and includes an industrial and municipal wastewater treatment plant.

3. Defendant's Facility releases noxious off-site odors onto Plaintiff's property causing damages through nuisance and negligence.

## PARTIES

4. At all times relevant hereto, Plaintiff Freddy Gutierrez has resided at 715 Port Street, #14, Crockett, CA 94525. Plaintiff is a citizen of California.

5. Defendant C & H Sugar, Inc. is a foreign business corporation incorporated under the laws of Delaware, with its principal place of business located at 1 North Clematis Street, Suite 200, West Palm Beach, Florida 33401. Defendant C & H Sugar, Inc. may be served with process through its registered agent, Corporate Creations Network, Inc., 5901 W. Century Blvd, #750, Los Angeles, CA 90045.

6. Defendant, including its predecessors and agents, either constructed or directed the construction of the Facility and exercised control and ownership over the Facility at all relevant times hereto.

7. Upon information and belief, Defendant and its agents have, at all times relevant hereto, operated and maintained the C & H Sugar, Inc. Facility located at 830 Loring Avenue, Crockett, CA 94525.

///

///

///

## JURISDICTION AND VENUE

8. Plaintiff is a citizen of California, and Defendant is a citizen of both Delaware, where Defendant is incorporated, and Florida, where corporate officers direct, control, and coordinate Defendant's activities.

9. This Court has Class Action Fairness Act (CAFA) jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a). CAFA Jurisdiction is appropriate because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10. Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiff's claims took place in this District, and because much of the property that is the subject of this action is situated in this District.

11. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

## GENERAL ALLEGATIONS

12. Defendant owns and operates a sugar refinery and wastewater treatment plant located at 830 Loring Ave., Crockett, CA 94525 (the "Facility") where it refines sugar for packaging and treats both industrial and municipal wastewater. Through Defendant's operation of the Facility, Defendant unnecessarily emits noxious odors into the nearby residential community.

13. In 1976, the Crockett Community Services District ("CCSD") and Defendant signed a Joint Use Agreement, the terms of which stipulated that Defendant

"accepted full responsibility for operation of the Joint Treatment Plant, along with maintenance, improvements, and regulatory reporting."

14. Since that time, Defendant has owned, operated, and maintained both industrial and municipal wastewater treatment operations at the Facility.

15. The Facility treats wastewater produced both as a byproduct of the sugar refining process and municipal wastewater from the town of Crockett, including sewage.

16. The sugar refining process employed by Defendant involves breaking raw sugar cane down into sugar juice, which is then heated, clarified, and filtered to form a syrup mixture. This syrup mixture is then boiled down into sugar crystals that can be cleaned, separated, and packaged for sale.

17. Defendant's sugar refining process produces a waste sludge, called "mud," which produces large quantities of hydrogen sulfide and is highly odiferous.

18. Hydrogen sulfide gas is identifiable by its characteristic "rotten egg" smell.

19. The "mud" generated through Defendant's refining process is treated at the wastewater treatment plant at the Facility, along with municipal wastewater, which contains sewage and is also highly odiferous.

20. When the mud and other waste byproducts from Defendant's refining plant and municipal wastewater are combined for treatment at the Facility, the resultant wastewater mixture produces extremely noxious odors.

21. The stench from the combination of two independently odorous wastewater sources is substantial. The resulting noxious odors can escape the Facility and permeate

the surrounding residential areas if the Facility is not properly maintained and/or operated.

22. Due to Defendant's inadequate efforts to prevent Facility emissions from escaping into the adjacent residential neighborhood, on frequent, recurrent, and continuing occasions too numerous to list herein, Plaintiff's property has been and continues to be physically invaded by noxious odors.

23. The noxious odors which entered Plaintiff's property originated from Defendant's Facility, as a result of inadequate, improper, and/or negligent operation and maintenance of the industrial and municipal wastewater treatment activities.

24. The noxious odor emissions caused by Defendant's Facility have been and continue to be dispersed across public and private land in the proposed class area.

25. Defendant's Facility and its noxious odor emissions have been the subject of frequent and persistent complaints from residents in the nearby residential area.

26. There are more than 2,200 residential households located within one mile of the Facility.

27. Numerous households within the proposed Class Area have contacted Plaintiff's counsel documenting the noxious odors they attribute to the Defendant's Facility.

28. Below is a small sampling of the factual allegations made by Plaintiff and putative class members to Plaintiff's counsel, demonstrating that the Facility is the source and cause of the odor emissions, which have caused damages to neighboring properties:

  a. Plaintiff Freddy Gutierrez reported that the odors "prevented [he and his family] from opening the windows to get fresh air."

    b. Putative Class Member Ramona Marks reported that the smell "kept us from opening our windows or enjoying our yard as we stayed indoors. Eyes burned if we stayed outside too long. The odor forced us to remain inside in a closed up house, couldn't enjoy our yard/deck."

    c. Putative Class Member Alexis Taylor reported that she is "not able to keep windows or doors open for air flow as well as the smell doesn't allow for outdoor activities without nausea." She described the smell as "rotten egg or sulfur."

29. Defendant's wastewater treatment Facility is subject to regulation by the Bay Area Air Quality Monitoring Division ("BAAQMD") and the California Environmental Protection Agency ("CalEPA"), in addition to federal regulatory authorities.

30. Defendant's well documented pattern of failing to control its emissions is demonstrated by:

    a. The BAAQMD, a state regulatory authority responsible for improving the air quality of the region, received more than 350 complaints between September and November of 2022 from local residents regarding intense "hydrogen sulfide" and "sewage" odors emanating from Defendant's Facility.

    b. The BAAQMD has issued numerous Notices of Violations ("NOV") to Defendant's Facility for odor nuisance and Facility violations. These violations include, but are not limited to:

        i. On September 15, 2022, the BAAQMD issued Defendant 5 NOVs on the same day under Code 1 Section 301 Health and Safety Code 41700 for constituting a Public Nuisance evidenced by "multiple confirmed odor complaints."

        ii. On September 22, 2022, the BAAQMD issued Defendant another NOV under Code 1 Section 301 Health and Safety Code 41700 for constituting a Public Nuisance evidenced by "multiple confirmed odor complaints."

      iii. On October 5, 2022, Defendant received two more NOVs under Code 1 Section 301 Health and Safety Code 41700 for constituting a Public Nuisance evidenced by "multiple confirmed odor complaints."

      iv. On October 11, 2022, Defendant was issued 4 additional NOVs under Code 1 Section 301 Health and Safety Code 41700 for constituting a Public Nuisance evidenced by "multiple confirmed odor complaints."

      v. Between September 15, 2022, and December 14, 2022, the BAAQMD issued Defendant's Facility an astonishing 26 total NOVs due to the Facility's noxious odor emissions constituting a Public Nuisance based on an inundation of confirmed citizen odor complaints.

      vi. Additionally, Defendant was issued three or more NOVs *on a single day* on four instances between September 15, 2022, and December 14, 2022.

    c. In addition to the multitude of NOVs issued to Defendant by the BAAQMD, the California EPA ("CalEPA"), which also has regulatory authority over the Facility, has issued Defendant two NOVs for several violations of the California Water Code since June 28, 2022. Specifically, the NOV from October 11, 2022, states that the violations included "failure to properly operate and maintain, failure to have an adequate Contingency Plan, and creation of a nuisance under Water Code section 13050."

    d. As a result of Defendant's emission of noxious odors emissions, there has been significant media attention concerning Defendant's operations.

31. Defendant has failed to adequately collect, capture, and destroy emissions produced by the treatment of waste and has otherwise failed to prevent odors from the Facility from invading the homes and property of Plaintiff and the Class.

32. A properly designed, operated, maintained, and managed wastewater treatment facility like Defendant's will collect, capture, mitigate, and destroy odorous compounds in order to prevent noxious emissions from invading the surrounding community.

33. Defendant is required to control its noxious odor emissions by, among other things, operating and maintaining the Facility in a manner that adequately captures, controls, and mitigates odor emissions so as to prevent them from escaping into the ambient air surrounding the Facility and implementing other reasonably available odor mitigation, elimination, and control systems at the Facility.

34. Specifically, BAAQMD Regulation 1-301 prohibits the Facility from operating in a manner that constitutes a public nuisance by "discharg[ing] from any source whatsoever such quantities of air contaminants or other material which cause injury, detriment, nuisance or annoyance to any considerable number of persons or the public; or which endangers the comfort, repose, health or safety of any such persons or the public, or which causes, or has a natural tendency to cause, injury or damages to business or property."

35. Further, BAAQMD Regulation 1-301 states that "three or more violation notices validly issued in a 30-day period to a facility for public nuisance shall give rise to a rebuttable presumption that the violations resulted from negligent conduct."

36. Since September 15, 2022, the BAAQMD has issued at least 26 separate and distinct NOVs to Defendant for violations relating to BAAQMD Regulation 1-301.

37. The Facility is also subject to BAAQMD regulations regarding odorous substances (7-300 et seq.) and hydrogen sulfide (9-2-100 et seq.), respectively.

38. As evidenced by the litany of NOVs in 2022 alone, Defendant has improperly and/or negligently constructed, operated, and/or maintained the Facility in violation of both its permits and the property rights of neighboring residents.

39. Overall, Defendant failed to install and maintain adequate technology to properly control its emissions of noxious odors from its wastewater treatment Facility, including but not limited to the following:

   a. Failed to properly operate and/or maintain the surge basin;

   b. Failed to properly operate and/or maintain three (3) aerated basins;

   c. Failed to properly operate and/or maintain two (2) clarifiers; and

   d. Failed to properly operate and/or maintain the chlorination/dichlorination basin.

40. In violation of its common law duties, Defendant's Facility has emitted, and continues to emit, noxious odors that are detectable outside the bounds of its property.

41. The Facility has emitted noxious odors that have caused negative impacts to its neighbors throughout the proposed Class Area.

42. The noxious odors emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage.

43. The invasion of Plaintiff's property and that of the Class by noxious odor emissions has adversely impacted the value of that property and has interfered with the use and enjoyment of that property, resulting in damages.

44. The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, construction, retail trade, ministry, education, dining, and lodging.

45. Plaintiff and the Class are a limited subset of individuals in Contra Costa County, and the Class Area, that includes only owner/occupants and renters of residential property who live within the proposed Class Area and fit within the preliminary Class Definition.

46. Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the noxious odors emitted from the Facility into public spaces; however, unlike Plaintiff and the Class, members of the public who are outside of the Class area have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

47. Defendant intentionally, recklessly, willfully, and/or negligently failed to properly maintain, operate, and/or construct the Facility, and caused the invasion of Plaintiff's property by noxious odors on intermittent and reoccurring dates too numerous to individually recount.

48. Defendant's noxious emissions are continuing; Defendant has failed to cease the noxious emissions, despite the emissions being abatable with reasonable care and diligence.

49. The invasion of Plaintiff's property and that of the Class by noxious odors has adversely impacted the value of those properties and has interfered with the use and enjoyment of those properties, resulting in damages well in excess of $5,000,000.

## CLASS ALLEGATIONS

**A. Definition of the Class**

50. Plaintiff brings this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent a Class of persons preliminarily defined as:

> **All owner/occupants and renters of residential property residing within one (1) mile of the Facility's property boundary between the date three (3) years predating the filing of this Complaint and the present.**

51. The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

52. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23 of the Federal Rule of Civil Procedure in that:

    a. The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b. There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

    c. Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

    d. The claims of the representative party are typical of the claims of the Class;

    e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    f. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

      g.    There are no unusual difficulties foreseen in the management of this class action; and

      h.    Plaintiff, whose claim is typical of those of the Class, will zealously and adequately represent the Class through his experienced counsel.

**B. Numerosity**

53. The approximate number of residential households within the Class Area is over 2,200.

54. The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

**C. Commonality**

55. Numerous common questions of law and fact predominate over any individual questions affecting Class Members, including, but not limited to the following:

      a.    Whether and how Defendant negligently and knowingly failed to reasonably construct, maintain, and operate the Facility to prevent off-site odor emissions;

      b.    Whether Defendant owed any duties to Plaintiff;

      c.    Which duties Defendant owed to Plaintiff;

      d.    Which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, operation, and maintenance of its Facility;

      e.    Whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

      f.    Whether it was reasonably foreseeable that Defendant's failure to properly construct, operate, and maintain the Facility would result in an invasion of Plaintiff's property interests;

      g.    Whether the degree of harm suffered by Plaintiff and the Class constitutes a substantial annoyance or interference; and

h. The proper measure of damages incurred by Plaintiff and the Class.

**D. Typicality**

56. Plaintiff has the same interests in this matter as all the other members of the Class and his claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

57. The claims of Plaintiff and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly construct, operate, and maintain the Facility and its operations.

58. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors, causing damage to their properties.

**E. Adequacy of Representation**

59. Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and does not have interests adverse to the Class.

60. Plaintiff has retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions of noxious industrial emissions. Plaintiff's Counsel will vigorously prosecute this action and

will otherwise protect and fairly and adequately represent Plaintiff and all absent Class Members.

**F. Class Treatment Is the Superior Method of Adjudication**

61. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

    a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

    b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

    c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

    d. The proposed class action is manageable.

62. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

63. Notice can be provided to members of the Class by U.S. Mail and/or publication.

64. Class treatment of Plaintiff's claims is appropriate and necessary.

## I. CAUSES OF ACTION I AND II

## PUBLIC AND PRIVATE NUISANCE

65. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

66. The noxious odors which entered Plaintiff's property originated from the Facility constructed, maintained and/or operated by Defendant.

67. The noxious emissions were created as a result of intentional and affirmative acts taken by the Defendant on the offending property.

68. The odors invading Plaintiff and the Class' properties are indecent and/or offensive to the senses, and obstruct the free use of their property so as to interfere with the comfortable enjoyment of life and/or property, including in but not limited to the following ways:

   a. causing Plaintiffs to remain inside their homes and forego use of their yards;
   b. causing Plaintiffs to keep doors and windows closed when weather conditions otherwise would not so require; and
   c. causing Plaintiffs annoyance, discomfort, embarrassment, and reluctance to invite guests to their homes.

69. Defendant owed and continues to owe a duty to Plaintiff and the putative Class to take reasonable steps to prevent and/or abate the interference with common public rights and/or the invasion of the private interests of the Plaintiff.

70. By constructing and then failing to reasonably repair, maintain, and/or operate its Facility, Defendant has negligently created an unreasonable risk of foreseeable harm by causing the invasion of Plaintiffs' properties by noxious odors and pollutants.

71. As a foreseeable, direct and proximate result of the foregoing conduct of Defendant, Plaintiff has suffered injuries and damages to his property including through interference with the use and enjoyment of private property, loss of property values, and diminution of property values.

72. The Class Area is home to a wide range of commercial and recreational activities, including but not limited to manufacturing, construction, retail trade, ministry, education, dining, and lodging.

73. Plaintiff and the Class are a limited subset of individuals in Contra Costa County, and the Class Area, that includes only owner/occupants and renters of residential property who live within the proposed Class Area and fit within the Class Definition.

74. Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, minors, customers, clients, and students, have experienced and been harmed by the noxious odors emitted from the Facility into public spaces; however, unlike Plaintiff and the Class, members of the public who are outside of the Class area have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

75. The injuries and damages suffered by Plaintiff are specially injurious to him given the impact to his property, as compared with the general public impacted by the odors, whose injuries do not include private property damage.

76. Plaintiff did not consent for noxious odors to enter into his land and property.

77. The nuisance conditions created by Defendant are abatable with reasonable care, effort, and diligence.

78. The nuisance conditions created by Defendant are continuing, as they arise intermittently and can be abated with reasonable diligence.

79. By causing noxious odors produced and controlled by Defendant's Facility to physically invade Plaintiff's land and property, Defendant intentionally, recklessly, and/or negligently created a nuisance which substantially and unreasonably interfered with Plaintiff's comfortable use and enjoyment of his property and caused the value of said property to be adversely impacted.

80. Whatever social utility Defendant's operations provide is outweighed by the harm suffered by the Plaintiff and the putative class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial relative loss in the value of their properties.

81. Defendant's substantial and unreasonable interference with Plaintiff's use and enjoyment of his property and diminution of property value constitutes a nuisance for which Defendant is liable to Plaintiff for all damages arising from such nuisance, including compensatory and injunctive relief.

## II. CAUSES OF ACTION III AND IV
### NEGLIGENCE

82. Plaintiff restates the allegations set forth in all previous paragraphs of this Complaint as if fully rewritten herein.

83. On occasions too numerous to mention, Defendant negligently and improperly constructed, maintained and/or operated its Facility, allowing excessive fugitive emissions to escape.

84. Defendant owed and continues to owe a duty to Plaintiff and the putative class, as neighboring residents with private property interests, to prevent and abate the interference with, and the invasion of, their private property interests.

85. By failing to properly construct, maintain and/or operate its Facility, and follow proper wastewater treatment practices, Defendant failed to exercise its duty of ordinary care and diligence so that noxious odors would not invade and damage Plaintiff's property.

86. As a direct and proximate result of Defendant's negligence in constructing, maintaining, repairing, and/or operating the Facility, Plaintiff's property was physically invaded by noxious odors on occasions too numerous to list individually.

87. As a further direct and proximate result of the foregoing conduct of Defendant, Plaintiff suffered damages to his property as alleged herein. Such damages include, but are not limited to, diminution in the value of Plaintiff's property, loss of property value, and the interference with the right of use and enjoyment of Plaintiff's property.

88. By failing to construct, maintain and/or operate its Facility, Defendant has caused the invasion of Plaintiff's property by noxious odors.

89. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, maintained and/or operated its Facility and

knew, or should have known upon reasonable inspection that such actions would cause Plaintiff's property to be invaded by noxious odors.

90. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiff's residence has been and continues to be physically invaded by noxious odors.

91. Defendant has been issued three or more NOVs *on a single day* on four instances between September 15, 2022, and December 14, 2022.

92. Defendant's conduct in causing noxious odors to invade Plaintiff's property has caused damages to Plaintiff's property, including unreasonable interference with ordinary use and enjoyment and diminution in value of said property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiff as representative of the proposed Class and designation of his counsel as Class Counsel;

C. Judgment in favor of Plaintiff and the Class Members and against Defendant;

D. An Order holding that entrance of the aforementioned noxious odors upon Plaintiff's property constituted a nuisance;

E.  An Order holding that Defendant was negligent in causing property damages to Plaintiff and the Class, causing damages to property;

F.  An award, to Plaintiff and the Class, of compensatory damages, including pre-judgment and post-judgment interest thereupon;

G.  An award to Plaintiff and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations;

H.  An award of attorney fees and costs, as permitted by law or the Court; and

I.  Such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues raised in this Complaint.

Dated:  June 27, 2023

**ARIAS SANGUINETTI WANG & TORRIJOS LLP**

By:  */s/ Mike M. Arias, Esq.*
MIKE ARIAS, ESQ.
ARNOLD C. WANG, ESQ.
M. ANTHONY JENKINS, ESQ.

**LIDDLE SHEETS COULSON P.C.**

STEVEN D. LIDDLE, ESQ.*
LAURA L. SHEETS, ESQ.*
D. REED SOLT ESQ.*
*pro hac vice to be submitted*

*Attorneys for the Plaintiff and Putative Class*