UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDDY GUTIERREZ,<br><br>   Plaintiff,<br><br>  v.<br><br>C&H SUGAR, INC.,<br><br>   Defendant. | Case No. 23-cv-03192-SI<br><br>**ORDER DENYING MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND DENYING MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Re: Dkt. No. 31 |

Before the Court is defendant's motion to dismiss plaintiff's complaint and motion to strike class allegations. Dkt. No. 31. Plaintiff opposes. Dkt. No. 34. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motions are suitable for resolution without oral argument, and VACATES the November 17, 2023 hearing. For the reasons stated below, the Court DENIES the motions.

## BACKGROUND[1]

### I. General Allegations

Plaintiff Freddy Gutierrez ("Gutierrez") brings this class action against defendant C&H Sugar, Inc. ("C&H") "for its release of noxious odors onto Plaintiff's property." Dkt. No. 1 ("Compl.") ¶ 1, 2, 4. Defendant owns and operates a sugar refinery and municipal wastewater treatment facility in Crockett. The C&H sugar facility ("Facility") offloads, stores, and refines 800,000 tons of raw sugar annually. *Id.* ¶¶ 2, 12. Plaintiff resides in Crockett and alleges the odors

---

[1] For purposes of this motion to dismiss, the Court treats as true the factual allegations as stated in plaintiffs' complaint and draws all reasonable inferences in plaintiffs' favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

the Facility releases onto his property have caused damages through public and private nuisance and negligence. *Id.* ¶ 3.

The Facility refines sugar for packaging, treats wastewater from the sugar refining process, and treats municipal wastewater from the town of Crockett. *Id.* ¶ 12, 15. The sugar refining process produces a "waste sludge, called 'mud,' which produces large quantities of hydrogen sulfide and is highly odiferous." *Id.* ¶ 17. This "mud" is treated at the wastewater treatment plant along with the municipal wastewater, "which contains sewage and is also highly odiferous." *Id.* ¶ 19. The resulting byproducts create "extremely noxious odors" that "can escape the Facility and permeate the surrounding residential areas if the Facility is not properly maintained and/or operated." *Id.* ¶ 20, 21.

According to plaintiff, defendant has failed to prevent the emissions from "escaping into the adjacent residential neighborhood" and as a result, plaintiff's property "has been and continues to be physically invaded by noxious odors" on "frequent, recurrent, and continuing occasions too numerous to list." *Id.* ¶ 22. The noxious odors that entered plaintiff's property originated from the Facility "as a result of inadequate, improper, and/or negligent operation and maintenance" of the wastewater treatment activities. *Id.* ¶ 23. The noxious odor emissions have also "been the subject of frequent and persistent complaints from residents in the nearby residential area." *Id.* ¶ 25. Defendant has failed to adequately collect, capture, mitigate, and destroy its odorous compounds and emissions to prevent them from escaping into the surrounding area. *Id.* ¶¶ 31-34. Specifically, defendant has "failed to install and maintain adequate technology to properly control its emissions." *Id.* ¶ 39. Plaintiff provides specific technologies defendant has allegedly failed to properly operate or maintain. *Id.* ¶ 39. According to plaintiff, the "nuisance conditions created by Defendant are abatable with reasonable care, effort, and diligence." *Id.* ¶ 77.

The odors have prevented plaintiff from opening the windows in his home to get fresh air. *Id*. ¶ 28. Additionally, "[n]umerous households within the proposed Class Area have contacted Plaintiff's counsel documenting the noxious odors they attribute to the Defendant's Facility." *Id.* ¶ 27. One putative class member reported the odor "kept us from opening our windows or enjoying our yard as we stayed indoors. Eyes burned if we stayed outside too long. The odor forced us to

remain inside in a closed-up house, couldn't enjoy our yard/deck." *Id.* ¶ 28. Another putative class member reported she is "not able to keep windows or doors open for air flow as well as the smell doesn't allow for outdoor activities without nausea." *Id*. She described the odor as smelling like "rotten egg or sulfur." *Id*. The odors "are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage." *Id.* ¶ 42. The Bay Area Air Quality Monitoring Division ("BAAQMD") and the California Environmental Protection Agency ("CalEPA") regulate defendant's facility. *Id*. ¶ 29. The BAAQMD "received more than 350 complaints between September and November of 2022 from local residents regarding intense 'hydrogen sulfide' and 'sewage' odors emanating from Defendant's Facility." *Id*. ¶ 30. The BAAQMD and CalEPA have issued "numerous" Notice of Violations against defendant for the "odor nuisance" and facility violations, some of which are listed in plaintiff's complaint. *Id*. ¶ 30, 36.

The physical "invasion" of plaintiff's property and that of the proposed class by noxious odor omissions has resulted in damages including diminution in the value of plaintiff's property, loss of property value, and unreasonable interference with the right of use and enjoyment of plaintiff's property. *Id.* ¶¶ 43, 79, 87, 92. The odors are "indecent and/or offensive to the senses" and obstruct the "free use" of plaintiffs' property by causing plaintiffs to "remain inside their homes and forego use of their yards" and "keep doors and windows closed," and by causing plaintiffs "annoyance, discomfort, embarrassment, and reluctance to invite guests to their homes." *Id.* ¶ 68. Plaintiff and proposed class members have suffered damages different in kind from that of the public "in the form of diminished property values and/or loss of use and enjoyment of their private property." *Id*. ¶¶ 46, 74.

## II. Class Allegations

Plaintiff seeks to represent a class preliminarily defined as: "All owner/occupants and renters of residential property residing within one (1) mile of the Facility's property boundary between the date three (3) years predating the filing of this Complaint and the present." Dkt. No. 1 ("Compl.") ¶ 50. The proposed definitional boundary is subject to modification because discovery "will disclose

3

the location of all persons properly included in the Class." *Id.* ¶ 51.

The approximate number of residential households within the proposed class area is over 2,200. *Id.* ¶ 53. The class area is also home to a "wide range of commercial and recreational activities, including but not limited to manufacturing, construction, retail trade, ministry, education, dining, and lodging." *Id.* ¶ 44. Plaintiffs allege that numerous questions of law and fact predominate over any individual questions, including, but not limited to:

> (a) Whether and how Defendant negligently and knowingly failed to reasonably construct, maintain, and operate the Facility to prevent off-site odor emissions; (b) Whether Defendant owed any duties to Plaintiff; (c) Which duties Defendant owed to Plaintiff; (d) Which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, operation, and maintenance of its Facility; (e) Whether and to what extent the Facility's noxious odors were dispersed over the Class Area; (f) Whether it was reasonably foreseeable that Defendant's failure to properly construct, operate, and maintain the Facility would result in an invasion of Plaintiff's property interests; (g) Whether the degree of harm suffered by Plaintiff and the Class constitutes a substantial annoyance or interference; and (h) The proper measure of damages incurred by Plaintiff and the Class. *Id.* ¶ 55.

Plaintiff alleges that the claims of each class member, if brought individually, "would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief." *Id.* ¶ 56. "Numerous households in the proposed Class Area have contacted Plaintiff's counsel documenting the noxious odors they attribute to the Defendant's Facility." *Id.* ¶ 27. Additionally, the Bay Area Air Quality Monitoring Division ("BAAQMD") received more than 350 complaints between September and November of 2022 from local residents regarding the odors emanating from defendant's facility, and BAAQMD has issued numerous Notices of Violation to the facility for odor nuisance and facility violations. *Id.* ¶ 30. Plaintiff further alleges that the Rule 23 requirement of adequacy of representation is met and that class treatment is a superior method of adjudication for this case. *Id.* ¶¶ 59-62.

**LEGAL STANDARD**

I.   **Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A pleading must contain allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) is proper when the complaint "lacks a cognizable legal theory" or "fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

II.   **Federal Rule of Civil Procedure 12(f)**

Federal Rule of Civil Procedure 12(f) provides that a court may, on its own or on motion,

"strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that arises from litigating spurious issues by dispensing of those issues before trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, motions to strike are generally disfavored. *Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). Generally, a motion to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). When ruling on a 12(f) motion to strike, the Court "must view the pleading in the light most favorable to the nonmoving party." *Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337, at *4 (N.D. Cal. May 6, 2013).

There is a split in this District as to whether a motion to strike class allegations may be entertained at the motion to dismiss stage. *Ogala v. Chevron Corp.*, 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014) (collecting cases). When it is entertained, judges in this District have applied a "very strict standard" to motions to strike class allegations on the pleadings. *Id.* While district courts have "broad discretion to control the class certification process," including "[w]hether or not discovery will be permitted," the pleadings alone will often "not resolve the question of class certification and [] some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

## DISCUSSION

### I. Motion to Dismiss Plaintiff's Complaint

Defendant argues that plaintiff cannot recover "purely economic" losses under a negligence claim; that plaintiff has not alleged enough facts "demonstrating a substantial or unreasonable interference with his use of enjoyment of property" as required for a private nuisance claim; and that plaintiff's public nuisance claim must be dismissed because he does not allege injury that differs from the general public. Defendant further argues that even if plaintiff could state a nuisance claim, plaintiff cannot recover prospective damages for a nuisance that can be abated ,and thus plaintiff's damages should be limited to "actual injury suffered prior to the commencement" of this action.

6

**A.     Negligence Claim**

**1.     Dismissal as a Matter of Law**

Defendant argues that under California law, without allegations of physical injury to person or property, a plaintiff's claim for negligence asserting "purely economic damages" must be dismissed. Dkt. No. 31 at 6. Defendant argues that damages for "interference with the use and enjoyment of private property, loss of property values, and diminution of property values," are economic losses. *Id*. at 6-7 (citing Compl. ¶ 21). Defendant argues the economic loss rule was "decisively confirmed" in *S. California Gas Leak Cases*, 7 Cal. 5th 391 (2019). In *California Gas Leak*, local businesses brought a negligence action against a gas company, seeking damages for lost profits allegedly resulting from a months-long natural gas leak. *Id*. at 883. The court concluded that the defendant did not have a tort duty to guard against negligently causing "purely economic losses," reasoning that "claims for purely economic losses suffered from mere proximity to an industrial accident create intractable line-drawing problems for courts." *Id.* at 395, 398.

Plaintiff contends that the loss of use and enjoyment of private property is not a purely economic loss but rather a cognizable property injury. Dkt. No. 34 at 10-11. Plaintiff argues defendant cites no cases applying the economic loss doctrine to the loss of use of real property. *Id*. Plaintiff asserts that *California Gas Leak* is distinguishable because the companies there alleged lost income but not personal injury, property damage, or lost use and enjoyment of private property. Dkt. No. 34 at 13.

Under California law, liability in negligence for "purely economic losses" is the "exception, not the rule." *California Gas Leak*, 7 Cal. 5th at 400 (citation omitted). Purely economic losses are "pecuniary or commercial loss that do[] not arise from actionable physical, emotional or reputational injury to persons or physical injury to property." *Id.* at 398 (quoting Dobbs, *An Introduction to Non-Statutory Economic Loss Claims*, 48 Ariz. L. Rev. 713 (2006)). There is no tort duty of care to guard against negligently causing "purely economic losses" absent a "special relationship" between the plaintiff and defendant. *California Gas Leak*, 7 Cal. 5th at 398, 400.[2]

---

[2] A "special relationship" means the "plaintiff was an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out." *Id.* at 400. There is

7

The parties dispute whether loss of use and enjoyment of private property is a "purely economic loss." The cases the parties cite in their briefs do not definitively answer this question. In *California Gas Leak*, the alleged damages were lost profits resulting from an industrial accident. *Id.* at 394, 398, 408. Defendant has not provided the Court with cases applying the "purely economic loss" doctrine as confirmed in *California Gas Leak* to loss of use of real property.[3] The Court cannot conclude, drawing all inferences in plaintiff's favor, that loss of use of real property is a purely economic loss such that it is appropriate to dismiss the negligence claim on the pleadings as a matter of law.[4]

---

no special relationship at issue here.

[3] In *Anthony v. Kelsey–Hayes Co.*, 25 Cal. App. 3d 442, 446 (1973), a case defendant cites, a California Court of Appeal ruled: "Loss of use is an item of incidental damage. It appears appropriate, therefore, to characterize it according to the nature of the damage of which it is an incident. Unless incidental to physical property damage, it would appear that it may be properly classified as a type of economic loss." At issue in *Anthony* was loss of use prior to and during inspections and repairs of a three-quarter ton truck about which General Motors sent out a letter regarding safety issues related to the wheels. *Id.* at 445-446. The Court does not find this case permits dismissal as a matter of law.

Defendant also cites *San Francisco Unified Sch. Dist. V. W.R. Grace & Co.*, 37 Cal. App. 4th 1318 (1995). There, the court was focused on the narrow question whether, when a building is constructed with asbestos-containing materials, a property owner's cause of action for strict liability or negligence accrues "on the owner's discovery of the mere presence of asbestos in the building or when asbestos contamination occurs." *Id.* at 1322. The language defendant cites in its brief falls under the heading "physical injury in asbestos-in-building cases" and the case holds that "physical injury from asbestos contamination, not the mere presence of asbestos, must have occurred before a cause of action for strict liability or negligence can accrue in an asbestos-in-building case." *Id.* at 1330. While *San Francisco Unified* does confirm that "plaintiffs may recover in tort for physical injury to person or property, but not for purely economic losses that may be recovered in a contract action," the case does not provide guidance as to whether loss of use of private property is a purely economic loss. *See id.* at 1327 (citations omitted).

[4] Defendant also argues that courts have only allowed negligence claims for purely economic losses when plaintiffs have "alleged physical damage to property or that substances such as particles, dust, or contamination were deposited on the property." Dkt. No. 31 at 8. According to defendant, odors are "intangible intrusions," not "physical intrusions," and are better suited for nuisance claims. *Id*. Plaintiff responds that the "tangible intrusion" argument is "parroted from the inapplicable laws of trespass." Dkt. No. 34 at 15. Defendant cites two trespass cases in support of this argument, neither of which involved a negligence cause of action. *See* Dkt. No. 31 at 8-9. In *Wilson v. Interlake Steel Co.*, 32 Cal. 3d 229, 230 (1982), plaintiffs sought damages under a trespass theory for noise that caused no "physical injury" to their property. The court held plaintiffs could not maintain a trespass action for the discomfort and annoyance caused by the noise but preserved

8

### 2. Whether Sufficient Facts Are Pled Regarding Plaintiff's Injury

The Court finds that plaintiff has pled sufficient facts regarding his injury to support his negligence claim at this stage. To go beyond purely economic loss, plaintiff must allege "physical, emotional or reputational injury to persons or physical injury to property." *California Gas Leak*, 7 Cal. 5th at 398. Plaintiff repeatedly alleges that his residence was "physically invaded" by noxious odors. He further alleges inability to open his windows. Compl. ¶ 28. He also alleges (along with putative class members) forgoing use of his yard due to the odors and annoyance, discomfort, embarrassment, and reluctance to invite guests into his home. *Id.* at ¶ 68. Complaints by putative class members of injuries including burning eyes and nausea cannot be imputed to plaintiff. *See Warth v. Weldin*, 422 U.S. 490, 502 (1975) (holding that for plaintiffs to have standing, they "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"). However, drawing all inferences in plaintiff's favor, the Court reads ¶ 68 of the complaint, referring to allegations of plaintiff and the putative class, to include allegations specific to plaintiff. The Court thus denies the motion to dismiss with respect to the negligence claim.

### B. Private Nuisance Claim

Defendant argues plaintiff's allegation that he was unable to open his windows is insufficient to support an inference that plaintiff suffered "substantial interference" causing "substantial actual damages" and an inference that the interference was "unreasonable." Dkt. No. 31 at 10, 11. Defendant further argues plaintiff's claims of "substantial" and "unreasonable" interference are conclusory. *Id.* at 11. Lastly, defendant argues plaintiff's claim that the "social utility Defendant's

---

the possibility of recovery on a nuisance theory, explaining that "[a]ll intangible intrusions, such as noise, odor, or light alone, are dealt with as nuisance cases, not trespass." *Id.* at 230, 232-33. *San Diego Gas & Electric Co. v. Superior Court*, 13 Cal. 4th 893 (1996) included causes of action for trespass, nuisance, and inverse condemnation based on the emission of electromagnetic radiation from defendant's use of electric and magnetic fields. The court held plaintiffs did not state facts sufficient to support a trespass cause of action because they did not (and could not) allege the electric and magnetic fields caused physical property damage. *Id.* at 935-937.

9

1   operations provide is outweighed by the harm suffered," is conclusory and that his "vague
2   allegation" of being unable to open his windows is "insufficient as a matter of law" to outweigh the
3   social utility of defendant's operations. *Id*. at 12.

4   Plaintiff argues that whether his inability to open his windows at his home rises to the level
5   of "substantial inference" and whether the social utility provided by defendant is outweighed by the
6   harm defendant causes is a question of fact that cannot be decided on the pleadings. Dkt. No. 34. at
7   16, 18.

8   "[A]n obstruction to the free use of property, so as to interfere with the comfortable
9   enjoyment of life or property . . . is a nuisance." Cal. Civ. Code § 3479. Proof of "interference with
10  the plaintiff's use and enjoyment" of their property is sufficient for nuisance liability. *San Diego
11  Gas & Elec. Co.*, 13 Cal. 4th at 937. A nuisance cause of action requires proof that "the plaintiff's
12  interest in the use and enjoyment of the land was substantial, i.e., that it caused plaintiff to suffer
13  substantial actual damage." *Id.* at 938 (internal quotations and citations omitted). The interference
14  must also be unreasonable. *Id.* at 938 (internal quotations and citations omitted). "The primary test
15  for determining whether the [interference] is unreasonable is whether the gravity of the harm
16  outweighs the social utility of the defendant's conduct, taking a number of factors into account." *Id*.
17  (citing Rest. 2d Torts, §§ 826–831).

18  The Court finds that plaintiff has pled enough facts to allege defendant's actions substantially
19  and unreasonably interfered with his use and enjoyment of his property. Plaintiff alleges he cannot
20  freely use and comfortably enjoy his property as the noxious odors force him to close his windows.
21  Compl. ¶ 28. He also alleges (along with putative class members) discomfort, embarrassment, and
22  reluctance to invite guests over and forgoing use of yards due to the odor. *Id*. at ¶ 68. Plaintiff
23  further argues that defendant failed to install and maintain adequate and available technology to
24  properly control its emissions and that the nuisance conditions are abatable. *Id.* ¶ 39. Whether the
25  alleged interferences with plaintiff's use of his property are substantial and unreasonable are
26  questions of fact that cannot be decided on the pleadings.

### C. Public Nuisance Claim

Defendant argues plaintiff's public nuisance claim should be dismissed because he has "not sufficiently stated any cognizable damage" (addressed under the private nuisance claim) and because he has not alleged an injury that differs from that of the general public. Dkt. No. 31 at 10-11. Plaintiff responds that a plaintiff claiming a nuisance that is both public and private "must only show that they suffered damages specifically referable to the use and enjoyment of [their] land." Dkt. No. 34 at 18 (citations omitted).

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. "A private party may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." *Id.* § 3493. To sue to enjoin a public nuisance, a plaintiff must "allege and prove facts showing that it causes special injury to himself in person or property." *Frost v. City of Los Angeles*, 181 Cal. 22, 24-25 (1919) (citations omitted). "The injury to the individual must [] be different in kind and not merely in degree from that suffered by the general public." *Brown v. Rea*, 150 Cal. 171, 174 (1907). However, "an injury to private property, or to the health and comfort of an individual, is in its nature special and peculiar and does not cause a damage which can properly be said to be common or public, however numerous may be the cases of similar damage arising from the same cause." *Lind v. City of San Luis Obispo*, 109 Cal. 340 (1895), *see also* Rest. 2d Torts, § 821(C) ("when the public nuisance causes personal injury to the plaintiff or physical harm to his land or chattels, the harm is normally different in kind from that suffered by other members of the public and the tort action may be maintained").

Plaintiff and defendant cite seemingly contradictory California Court of Appeal decisions regarding whether a plaintiff need allege damage different in kind from that suffered by other members of the public. Tracing these cases back to the underlying California Supreme Court decisions, this Court interprets the legal standard to be that a plaintiff who pleads personal injury or an injury to private property has pled an injury different in kind from that of the general public. Here, plaintiff has alleged inability to open his windows, forgoing use of his yard, annoyance,

1  discomfort, and reluctance to invite guests over. Compl. ¶¶ 28, 68. The Court finds these to be
2  sufficient factual allegations of personal or property injury to maintain the public nuisance claim at
3  this pleading stage.

### D. Prospective Damages on Nuisances that Can be Abated

Lastly, defendant argues that if the Court does not dismiss plaintiff's claims for nuisance outright, plaintiff's claim for prospective damages should be dismissed and damages should be limited to injuries that occurred prior to the commencement of the suit, because California law does not permit prospective damages when a nuisance can be abated. Dkt. No. 31 at 13-14. Plaintiff contends that "unless and until the court orders abatement [he] is entitled to pursue all damage remedies available under law." Dkt. No. 34 at 19 n.10. Plaintiff points out that defendant's argument "appears to be based on the principle that a court may not *award* double damages," which is not applicable to pleadings. *Id*.

The Court does not find it appropriate to dismiss any of plaintiff's damages claims on the pleadings. When a nuisance can be abated, "a plaintiff cannot have a *judgment* abating the nuisance and also a judgment for the loss in market value of the property caused by the nuisance, since: 'Plaintiff would obtain a double recovery if she could recover for the depreciation in value and also have the cause of that depreciation removed'"). *Rhodes v. San Mateo Inv. Co.*, 130 Cal. App. 2d 116, 118 (1955) (quoting *Spaulding v. Cameron*, 38 Cal. 2d 265, 269 (1952)) (emphasis added). Plaintiff has pled diminution in property value damages, which cannot be *recovered* in a continuing nuisance case. *Gehr*, 165 Cal. App. 4th at 668 (citing *Spaulding*, 38 Cal. 2d at 269). However, the Court has not determined that the alleged nuisance here is continuing and abatable and a decision about what damages plaintiff may recover is not appropriate at this pleading stage.

## II. Motion to Strike Class Allegations

Defendant argues that the class allegations "should be stricken because the alleged claims require highly individualized inquiries and the class definition is arbitrary and overbroad." Dkt. No. 31 at 14. Defendant asserts that proposed classes in environmental tort actions alleging claims based

12

1 on nuisance odors typically fail to satisfy the class certification requirement that common issues of law and fact predominate. *Id.* In support of this assertion, defendant cites primarily out of circuit district court decisions denying class certification. *See id.* at 15.

Specifically, defendant argues that odorous emissions do not spread evenly across a one-mile radius with diverse geography. *Id.* at 16. Defendant contends that plaintiffs will be unable to show with common proof that "each of the 2,200 residences were affected in the same way by the same odor at the same intensity for the same amount of time from the same source." *Id.* at 17. Defendant argues that "[e]ven if plaintiff could prove all class members were exposed to odors, individual inquiries would be required to determine whether the odor was strong enough to interfere with the enjoyment of individual class members' property, or whether individual class members experienced an actual loss or damage." *Id.* at 19 (citation and internal quotation marks omitted).

Defendant argues that plaintiff's class allegations should be stricken for the additional reason that the proposed class definitions for odor actions based on a circle drawn a certain distance from the facility "have repeatedly been denied certification because they are overbroad, arbitrary, and lack a connection with the alleged injury." *Id.* at 19-20. In support of this contention, defendant cites district court decisions from around the country decided at the class certification stage. *See id.* at 20-21. Defendant argues that proposed class is overbroad "because the geographic boundaries bear no rational relationship to the harm alleged and encompass individuals who may have sustained no injury." *Id.* at 21.

Plaintiff responds that defendant strays from the legal standard for motion to strike pleadings under Rule 12(f) and instead offers argumentation regarding "speculative *factual* defenses to Plaintiff's anticipated arguments in support of class certification." Dkt. No. 34 at 21. The Court agrees. The class allegations do not contain "redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. Pro. 12(f). Nor has defendant proven that there is no possibility that a class action can be maintained on the facts alleged or that certifying a class would be improper as a matter of law. The factual record is completely undeveloped at this point, such that defendant's various issues, such a predominance, ascertainability and overbreadth, cannot properly be evaluated.

The Ninth Circuit has cautioned that "[w]ere we to read Rule 12(f) in a manner that allowed

13

litigants to use it as a means to dismiss some or all of a pleading… we would be creating redundancies within the Federal Rules of Civil Procedure" because a Rule 12(b)(6) motion "already serves such a purpose." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010). The suitability of proceeding as a class action in this case will be properly considered in a motion for (or against) class certification, based on an appropriate factual record.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to dismiss plaintiff's complaint and motion to strike class allegations.

**IT IS SO ORDERED**.

Dated: November 15, 2023

_____
SUSAN ILLSTON
United States District Judge

14